UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHONDEL LAMAR LARKIN,                )       Case No. CV 09-2034-DSF (CT)
                                     )
              Petitioner,            )
                                     )       ORDER ADOPTING FINDINGS,
        v.                           )       CONCLUSIONS, AND
                                     )       RECOMMENDATIONS OF UNITED
JAMES YATES, Warden,                 )       STATES MAGISTRATE JUDGE
                                     )
                                     )
              Respondent.            )
_____)

     Pursuant to 28 U.S.C. § 636, the court has reviewed the petition, all the records and files herein, the report and recommendation of the United States Magistrate Judge, and petitioner's objections to the report and recommendation.

     The court notes that, since the magistrate judge issued her report and recommendation, the United States Supreme Court issued a decision that arguably has some bearing on petitioner's contention in his first ground for relief that his right to confrontation was violated.  In Melendez-Diaz v. Massachusetts, __ S. Ct. __, 2009 WL 1789468 (June 25, 2009), the Supreme Court confronted a case where the

1  prosecution, in lieu of in-court testimony, introduced certificates of

2  analysis to show that the substance recovered from the defendant was

3  cocaine and to show how much cocaine the defendant possessed.

4  Although designated as "certificates," the certificates of analysis

5  were indistinguishable from sworn affidavits, as they were sworn

6  declarations affirming or establishing a fact - in that case, the type

7  and weight of the substance recovered from the defendant.  Id. at *3.

8      Under these facts, the Supreme Court held that, given its

9  decision in Crawford v. Washington, 541 U.S. 36 (2004), it was clearly

10  established that the certificates of analysis were testimonial

11  statements.  Id. at *4.  Accordingly, they could not be admitted

12  without violating the defendant's Confrontation Clause rights absent

13  a showing that the analysts who prepared them were unavailable to

14  testify at trial and that petitioner had a prior opportunity to cross-

15  examine the analysts.  Id.

16      Although Melendez-Diaz appears similar to this case at first

17  blush, the two cases are, in fact, readily distinguishable.  In

18  Melendez-Diaz, the offending testimony consisted of sworn affidavits

19  of unavailable witnesses.  See Melendez-Diaz, 2009 WL 1789468 at *3

20  (finding that documents at issue in that case fell within "'core class

21  of testimonial statements'" because they were sworn affidavits); White

22  v. Ill., 502 U.S. 346, 365 (1992) (Thomas, J., concurring) (stating

23  that extrajudicial statements implicate Confrontation Clause only when

24  they are contained in formalized testimonial materials) (cited with

25

26

27

28

approval by <u>Melendez-Diaz</u>, 2009 WL 1789468 at *3).[1]  By contrast, here, the reports were not read into evidence as a sworn affidavit. Indeed, they were not read into evidence at all.   Instead, Dr. Word was testifying about the results of DNA testing in a lab where she was a supervisor.  Rather than simply read the reports into evidence, Dr. Word, albeit not contemporaneously with the preparation of the report, independently reviewed all the relevant data and offered her own independent interpretation of that data.[2]   (RT at 668, 677-78.) Indeed, the bulk of Dr. Word's testimony revolved around her own expertise in DNA testing and her own conclusions regarding the data she reviewed.  (<u>See</u>, <u>e.g.</u>, RT at 660-81.)   In short, Dr. Word's testimony about the test results performed by someone else is not akin to the affidavit-like certificates of analysis in <u>Melendez-Diaz</u>. Whereas the certificates of analysis in <u>Melendez-Diaz</u> were "functionally identical to live, in court testimony," the test results here, at best, served as a partial basis for the opinion of a testifying expert.

Moreover, the distinction between this case and <u>Melendez-Diaz</u> is too great to support the contention that the state courts unreasonably applied clearly established Federal law.   See <u>Carey v. Musladin</u>, 127

---

[1] Justice Thomas, who made up the fifth vote in the five-to-four holding of <u>Melendez-Diaz</u>, concurred.  In his concurrence, he stated that he would adhere to his position that extrajudicial statements implicate the Confrontation Clause only when they are contained in formalized testimonial materials.  <u>Melendez-Diaz</u>, 2009 WL 1789468 at *13 (Thomas, J., concurring).

[2] Notably, the majority in <u>Melendez-Diaz</u> explicitly rejected the suggestion that the Confrontation Clause required that every person whose testimony might be relevant to the authenticity of a sample or accuracy of a testing device appear in person as part of the prosecution's case.  <u>Melendez-Diaz</u>, 2009 WL 1789468 at *4 n.1.

S. Ct. 649, 654 (2006) (where Supreme Court precedent gives no clear answer to question presented, "it cannot be said that the state court 'unreasonab[ly] appli[ed] clearly established Federal law'"); see also Alberni v. McDaniel, 458 F.3d 860, 864 (9th Cir. 2006).  In fact, the California Supreme Court came to the opposite conclusion.  See People v. Geier, 41 Cal. 4th 555, 607 (2007).  Likewise, in Melendez-Diaz, four justices, Justices Breyer, Roberts, Alito, and Kennedy, concluded that the admission of the sworn affidavits at issue in that case did not run afoul of the Confrontation Clause.  Melendez-Diaz, 2009 WL 1789468 at *13-31.

Regardless, although Melendez-Diaz's holding as to the admission of sworn affidavits regarding scientific evidence may be clear and was well established by Crawford, the same cannot be said regarding a supervising expert's testimony about test results prepared by someone other than the testifying expert.  On the contrary, the fact that Justice Thomas in his concurrence limited Confrontation Clause protections to only extrajudicial statements contained in formalized testimonial material highlights the lack of clarity on this issue. Importantly, Justice Thomas was the fifth vote in the five-to-four decision, meaning that there would be no clear majority if, as in petitioner's case, the offending testimony did not consist of formalized testimonial material.  See Marks v. United States, 430 U.S. 188, 193 (1976) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds.").

Furthermore, assuming without deciding that Melendez-

<u>Diaz</u> announced a new rule of law that testifying experts in criminal cases could not base their opinions on reports generated by persons not testifying, petitioner would not be entitled to the benefit of such a new rule.  <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288 (1989)(new rule of constitutional law cannot be applied retroactively on federal collateral review to upset state conviction or sentence unless new rule forbids criminal punishment of primary, individual conduct or is a "watershed" rule of criminal procedure).

Finally, assuming that <u>Melendez-Diaz</u> applied and that the admission of Dr. Word's testimony regarding the reports ran afoul of that decision and <u>Crawford</u>, petitioner suffered no prejudice as a result.  <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 623 (1993); <u>see also</u> <u>Melendez-Diaz</u>, 2009 WL 1789468 at 13 n.14 (noting that, despite finding certificates violated defendant's Confrontation Clause rights, the resulting error was subject to harmless error review).  As the magistrate judge observed, the DNA evidence did not establish that petitioner was in the home of the victim.  Rather, at best, it served only to show that petitioner could be not be excluded as a suspect. (RT at 680).

More importantly, however, Dr. Word repeatedly conceded that the DNA evidence in this case was not particularly strong. (<u>See</u>, <u>e.g.</u>, RT at 687 (conceding that DNA sample could not pinpoint race of DNA donor); RT at 718 (conceding that "it's not a very good sample");  RT at 720 (noting that initial test results of DNA sample were "very weak, very limited."); RT at 740 (conceding that "clearly, the ability to detect the results was very limited for the sample"); RT at 746 (testifying that "[i]t simply would not be right to make an inclusion or exclude based on so little data").)  Indeed, Dr. Word testified

1  that she would "willingly admit the data on this case are not very

2  good." (RT at 755.)

3      Moreover, defense counsel extracted other admissions that

4  undermined Dr. Word's testimony. For example, the jury heard Dr. Word

5  admit that she had no part in the actual testing of the sample upon

6  which she based her opinion. (RT at 686-89, 690-92.) To the extent

7  that petitioner sought to impeach the reliability of the testing

8  facilities (see petition at 13), he was free to question Dr. Word

9  about the reliability of the facilities and any prior incidents that

10  he wished to explore.

11      Furthermore, as the magistrate judge explained in her report and

12  recommendation, the prosecutor introduced substantial evidence aside

13  from Dr. Word's testimony to show petitioner's guilt. A fingerprint

14  was recovered from the back door of the victim's apartment and a palm

15  print was recovered from inside the victim's kitchen window sill.

16  (Court of appeal opinion at 3-4.) Both prints were matched to

17  petitioner. (Id. at 4.) Although the victim initially did not

18  identify petitioner or anyone else from a photographic lineup, she

19  identified him at trial, explaining that she did not identify

20  petitioner earlier out of fear for her safety. (Opinion at 5-7.)

21  Additionally, the victim's neighbor identified petitioner from a

22  photographic lineup and at trial as the man who, the night before the

23  attack, had tried to enter her apartment. (Id.) The prosecutor also

24  introduced other crimes evidence that supported the jury's verdict.

25  (Id. at 4-5.)

26      In short, petitioner is not entitled to relief with respect to

27  his Confrontation Clause challenge. Accordingly, subject to the

28  foregoing analysis and the non-material change identified below, the

court concurs with and adopts the findings, conclusions, and recommendations of the magistrate judge.

In his objections, petitioner challenges, among other things, the Magistrate Judge's resolution of petitioner's second ground for relief based on his counsel's failure to call a sur-rebuttal witness for impeachment purposes. Specifically, petitioner challenges the Magistrate Judge's finding that petitioner suffered no prejudice from his counsel's failure to call a sur-rebuttal witness. The Magistrate Judge found that petitioner suffered no prejudice, in part, because a testifying detective had already undermined the victim's testimony that she could have - but was afraid to - identify petitioner as her attacker. (Objections at 6-10.) Petitioner contends that finding was erroneous because the detective's testimony supported the victim's testimony. Specifically, petitioner notes that the detective testified that the victim appeared to focus on petitioner's picture in a photographic line-up. (RT at 1074-75.)

This does not undermine the Magistrate Judge's finding regarding the lack of prejudice. First, the testimony on which petitioner focuses was preceded by the detective repeatedly stating that petitioner could not and did not identify anyone from the photographic line-up. (See, e.g., RT at 1070-71, 1074.) Indeed, the detective testified that at no time did petitioner "identify or tentatively identify anyone." (RT at 1074.) Second, although the detective testified that he recalled the victim focusing more on petitioner's photograph, the detective also testified that the victim "looked at each one of the photographs." (Id.) Given this fact and the fact that the victim never even tentatively identified anyone, the Magistrate Judge's finding regarding the lack of prejudice was not

erroneous.

Finally, the Court notes that <u>Kessee v. Mendoza-Powers</u>, __ F.3d __ , 2009 WL 1758744 (9th Cir. June 23, 2009)provides further support for the Magistrate Judge's recommendation as to the third ground for relief.


IT IS ORDERED that:

The report and recommendation is accepted with the following modifications, <u>see</u> 28 U.S.C. § 636(b)(1)(C), which are not material to the court's decision:

p. 3, lns. 20-22: strike the word "detective" and all that follows in that sentence and replace it with "laboratory director to read a portion of a laboratory report.";

p. 5, ln. 20 should read "reasoned state court decision . . .";

p. 9, ln. 16: "Dr. Wood" should be "Dr. Word";

p. 9, ln. 21: "<u>McAnnich</u>" should be "<u>McAnich</u>";

p. 10, ln. 12: "in" should be "is";

p. 10, ln. 15: "**III**" should be "**II**";

p. 10, ln. 26: "them" should be "then";

p. 12, ln. 18: delete "counsel made errors so serious that";

p. 17, ln. 23: add "to" to the end of the line;

p. 19, ln. 6: "entitled" should be "entitle";

p. 19, ln. 6: "<u>Schrirro</u>" should be "<u>Schriro</u>."

IT IS ORDERED that judgment be entered denying the petition for writ of habeas corpus and dismissing this action with prejudice.


DATED:      7/9/09            _____
                                        DALE S. FISCHER
                             UNITED STATES DISTRICT JUDGE